UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICHAEL PASONICK, JR.,

                 Petitioner,

– against –

FRANK STRADA,

                 Respondent.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-6204 (SLT)

**TOWNES, United States District Judge:**

On December 17, 2012, pro se petitioner Michael Pasonick, Jr., filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting that this Court order the Federal Bureau of Prisons ("BOP") to "reinstate" the initial placement recommendation and transfer him to a residential re-entry center ("RRC") for the final 60-90 days of his confinement. (Docket No. 1 ("Pet.") at 11). On January 18, 2013, Respondent filed a response, arguing that Petitioner's claim is procedurally barred because he failed to exhaust his administrative remedies and that, in any event, his petition is without merit. (Docket No. 8 ("Resp.")). By correspondence dated January 25, 2013, Petitioner filed his reply, reiterating his arguments that any failure to exhaust should be excused, that his initial RRC placement recommendation is binding, and that the Court should order Respondent to transfer him immediately to the RRC. (Docket No. 10 ("Reply")). While the Court commends Petitioner on his thorough submissions and his obvious commitment to successful reintegration into society, for the reasons set forth below, the petition is denied.

## I. FACTS

On March 9, 2012, pursuant to a plea agreement, the United States District Court for the Middle District of Pennsylvania sentenced Petitioner to one year imprisonment, two years of supervised release, and a $250,000 fine, for violation of 18 U.S.C. § 666(a)(2). (Pet. Decl. ¶ 4; Resp. at 3). On April 30, 2012, Petitioner surrendered to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (Pet. Decl. ¶ 4). His full-term release date is April 28, 2013. (Resp. at 3).

On May 16, 2012, Petitioner met with his Unit Team at the MDC which recommended an RRC placement of 60 to 90 days. (Pet. Decl. ¶ 6). On June 25, 2012, He was called to the Unit Team office and asked to sign an agreement concerning his release to the halfway house, giving him "the impression that the issue of RRC placement had been decided and approved." (Pet. Decl. ¶ 9). Indeed, according to Respondent, on June 25, 2012, the Unit Team conducted an individualized assessment of Petitioner's prospects for RRC placement and issued a recommendation for 60 to 90 day period. (Resp. at 4). This recommendation was forwarded to the BOP Regional Reentry Manager's ("RRM") Office in Philadelphia, which thereupon explored the appropriateness of placing Petitioner directly in home detention. (Resp. at 5). The RRM Office indicated to the Unit Team that bed space in Petitioner's release district was limited and that he appeared to be an appropriate candidate for home detention on his eligibility date. (Resp. at 5-6).

Meanwhile, on August 13, 2012, Petitioner states that he met with his Unit Team again, where he was presented with additional documentation regarding his RRC placement, and that he "signed the RRC rules and agreement documents" on October 15, 2012. (Pet. Decl. ¶¶ 10, 11). He "was now firmly convinced" of his 60 to 90 day RRC placement. (Pet. Decl. ¶ 11).

Petitioner states that the priest from his Pennsylvania church initially confirmed with the officer at the halfway house that his "name appeared on the computer screen which [he] interpreted that a bed was available." (Pet. Decl. ¶ 12). A short time later, however, the same priest told Petitioner that his name no longer appeared on the halfway house's computer screen. (Pet. Decl. ¶ 12). Petitioner was soon informed by his BOP case manager, without explanation, that "BOP's [RRM] . . . in Philadelphia had denied [the] RRC placement." (Pet. Decl. ¶ 13).

On November 8, 2012, Petitioner filed a request for informal resolution, seeking a 60 to 90 day RRC placement, which was denied the same day. (Decl. of Kenneth Bork, dated Jan. 17, 2013 ("Bork Decl."), Ex. 1). On November 11, 2012, Petitioner filed a request for administrative remedy regarding the placement. The denial, issued November 30, 2012, indicated that "[a]lthough the unit team referred you for 60-90 days placement, staff of the [RRC] reviewed all relevant factors and determined that you pose a low risk for recidivism and require minimal transitional needs. Accordingly, you were granted direct home confinement on your eligibility date." (Bork Decl. Ex. 3). Petitioner appealed to the BOP Regional Director, who issued a response on January 10, 2013, denying his request. (Bork Decl. Ex. 5). At the time he filed his petition in this Court, Petitioner had elected not to submit an appeal to the BOP General Counsel, the fourth step in the administrative remedy process. (Bork Decl. ¶ 9; Pet. at 1). By letter dated January 18, 2013, however, Petitioner indicates that he has since submitted his final appeal, though his letter appears to be missing the relevant exhibit. (Docket No. 9 ("Pet. Add.") ("Exhibit P is Petitioner's appeal to BOP's fourth and final step in their administrative remedy process.")).

3

## II. STATUTORY FRAMEWORK

Transfer of an inmate to an RRC prior to release is governed by the Second Chance Act of 2007, Pub.L. No. 110-199, 122 Stat. 657 (2008), which provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). However, "the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC." Johansson v. Strada, No. 12-CV-5296 (ARR), 2012 WL 6093534, at *2 (E.D.N.Y. Dec. 7, 2012). The BOP must consider five individualized factors in exercising its discretion over inmate placements and transfers, which include:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); see Johansson, 2012 WL 6093534, at *2. Significantly, "[i]f the BOP has considered the appropriate factors in reaching its placement decision, a court cannot reconsider the BOP's placement decision." Schick v. Lara, No. 11 Civ. 1175 (DLC)(HBP), 2012 WL 753755, at *1 (S.D.N.Y. Mar. 8, 2012); see Fournier v. Zickefoose, 620 F. Supp. 2d 313, 319 (D.Conn. 2009) ("[O]nce the court has determined that the BOP did not exceed its authority in reaching its decision, it is beyond the purview of the court to second guess the outcome.").

4

## III. DISCUSSION

### A. Exhaustion Administrative Remedies

As the Second Circuit has made clear, federal prisoners must exhaust their administrative remedies before filing a petition for habeas relief in federal court. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." Rosenthal v. Killian, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (citing Carmona, 243 F.3d at 634). Accordingly, federal inmates seeking to challenge the conditions of their confinement must first avail themselves of the Administrative Remedy Program ("ARP") developed by the BOP. See Lopez v. Terrell, 697 F. Supp. 2d 549, 555-56 (S.D.N.Y. 2010), rev'd on other grounds, 654 F.3d 176 (2d Cir. 2011). Under the ARP, an inmate must: (1) attempt to resolve the issue informally; (2) submit a formal written request to the institution; (3) appeal any unfavorable decision by the institution to the BOP Regional Director; and (4) appeal any unfavorable decision by the Regional Director to the BOP's General Counsel. See Rosenthal, 667 F. Supp. 2d at 366.

In this case, Petitioner initially conceded that he had not completed the fourth step required by the ARP. (Pet. at 1). He now indicates that he recently filed the final appeal. (Pet. Add. at 1, 2; Reply at 1). In both documents, he argues that any failure to complete the ARP should be excused because his "writ to this court is time sensitive" and "[w]ithout an expeditious response, [his] issue will become moot and will inflict irreparable harm on him." (Pet. at 1; Pet. Add. at 1). Respondent counters that "Petitioner provides no basis to argue that BOP cannot or would not resolve his administrative appeals expeditiously," noting that his previous requests and appeals received responses in one day, two weeks, and four weeks, respectively. (Resp. at

10-11). Indeed, this is not a case where circumstances prevented a petitioner from pursuing an appeal prior to seeking a habeas writ. See, e.g., Hinebaugh v. Wiley, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (finding futility where "legal files were confiscated and not returned until fourteen months later, thereby preventing [petitioner] from filing all relevant administrative appeals"). Given the January 28 and February 28, 2013, release dates Petitioner cites (Pet. Decl. ¶ 7), corresponding to a 90 or 60 day RRC period, respectively, the Court does not find that an appeal to the General Counsel would have been futile. Indeed, Petitioner now contends that he has submitted the last appeal required of the ARP. (Reply at 1).

### B. Merits of Petitioner's Claim

Even if this Court excuses Petitioner's failure to exhaust – or accepts his representation that he has submitted his final appeal – his petition nevertheless fails on the merits. Although he claims that he has a "Congressionally and statutorily mandated opportunity to participate in BOP's residential Reentry Program," (Reply at 2), it is well-settled that "a prisoner has no constitutional right to serve a sentence in any particular institution or to be transferred (or not transferred) from one facility to another," Thomas v. Terrell. No. 10-CV-512, 2012 WL 1745434, at *3 (E.D.N.Y. May 15, 2012). Accordingly, "so long as it considers the factors enumerated in § 3621," Mueses v. Terrell, No. 10-CV-1701 (SLT), 2010 WL 4365520, at *4 (E.D.N.Y. Oct. 27, 2010), "the BOP's discretion in making prisoner classifications is virtually unfettered," Bennett v. Terrell, No. 10-CV-1029 (ENV)(LB), 2010 WL 1170134, at *1 (E.D.N.Y. Mar. 24, 2010) (internal quotation marks omitted). At most, a court finding that the BOP has failed to consider the § 3621 factors can direct the BOP to fulfill that statutory requirement – "a court cannot make the designation itself." Schick, 2012 WL 753755, at *1. Indeed, that is why Petitioner's reliance on Owusu-Sakyi v. Terrell, No. 10-CV-507 (KAM),

2010 WL 3154833, at *5-6 (E.D.N.Y. Aug. 9, 2010) is unavailing. Although the district court "strongly encouraged the BOP to make every effort to place petitioner in an RRC in accordance with his Unit Team's original recommendation," it nevertheless denied Owusu-Sakyi's petition "in light of the broad discretion the BOP was given by Congress." Owusu-Sakyi, 2010 WL 3154833, at *5.

In this case, the BOP Unit Team properly considered the following information pursuant to the § 3621 factors:

> (1) There are community based resources available in [Petitioner's] releasing area.
> (2) [Petitioner] was involved in giving bribes to public officials. Specifically, his company was awarded contracts by public officials and in return payment was given to the officials as a reward.
> (3) [Petitioner] is serving a 12 month sentence for corrupt payment to influence official action concerning program receiving federal funds. [Petitioner] has a college degree. He has experience as a business owner and he was a licensed surveyor and engineer.
> (4) Any statement of the court that imposed the sentence . . . - None.
> (5) Any pertinent policy statement issued by the U.S. Sentencing Commission – None

(Decl. of Deidre Butts, dated Jan. 18, 2013 ("Butts Decl."), Ex. 1). Based upon its review of this information, the Unit Team issued a recommendation that Petitioner be placed in an RRC for "60-89 days," and "further recommended [Petitioner] be considered for home confinement after a brief transitional period at the [RRC]." (Butts Decl. Ex. 2). Having received and considered this recommendation, the Philadelphia RRM indicated that bed space in Petitioner's release district was a concern and that Petitioner appeared to be a good candidate for home detention. (Butts Decl. ¶ 10). The Unit Team agreed that Petitioner would be appropriate for such home confinement. (Butts Decl. ¶ 10). This last exchange appears to be the basis of Petitioner's claim. He argues that Respondent "ignores a BOP directive prohibiting [RRC] staff from denying Petitioner's placement," specifically that "'[i]f [RRC] staff question the appropriateness of the

referral or the length of the requested placement, they must communicate these concerns to the referring institution . . . . Under no circumstances should CCM staff unilaterally deny RRC referrals or adjust placement dates.'" (Pet. at 1 (quoting BOP memorandum, dated June 24, 2010 ("BOP Memo"), at 2).

It is worth examining, however, the full text of the BOP Memo: The section Petitioner cites states that:

> Community Corrections Management (CCM) staff must continue to review referral documents and other pertinent information for every RRC referral. If CCM staff question the appropriateness of the referral or the length of the requested placement, they must communicate these concerns to the referring institution. <u>Differing recommendations will be resolved at the appropriate level within the regional management structure</u>. Under no circumstances should CCM staff unilaterally deny RRC referrals or adjust placement dates, <u>unless these determinations can be linked directly to a lack of RRC bedspace or fiscal resources</u>.

(BOP Memo at 2) (emphasis added). First, there is no indication in this case that the RRM Office "unilaterally denied," (Pet. Decl. ¶ 18), Petitioner's placement. The ultimate decision was made by the BOP and its Unit Team after considering all of the § 3621 factors, the "communicate[d] . . . concerns" from the RRM Office in Philadelphia, and the issue of bedspace. The Unit Team had also explicitly contemplated home confinement in some form for Petitioner. See also § 3624(c)(2) (granting BOP "authority . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment . . . or 6 months"). Second, even if Petitioner is correct that a bed is technically available for his potential placement period, (Reply at 2), "the BOP has the discretion to hold that bed space in reserve for anticipated future needs, and a court cannot review that determination." Schick, 2012 WL 753755, at *2. Accordingly, not only does this Court lack the authority simply to order the BOP to transfer Petitioner to an

RRC, but it "sees no basis for finding that BOP abused its discretion, such that a reconsideration of petitioner's placement would be warranted." Johansson, 2012 WL 6093534, at *5.

## IV. CONCLUSION

For the reasons set forth above, the petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

s/ SLT

/SANDRA L. TOWNES
United States District Judge

Dated: January 30, 2013
Brooklyn, New York